**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Maria Leticia Ruiz DE CRUZ,
Defendant–Appellant.**

**No. 95–50095.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 6, 1996.

Decided May 1, 1996.

---

Stephen M. Romero, El Monte, California, for defendant-appellant.

Brent A. Whittlesey, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellee.

Before: WALLACE, FERGUSON, and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

## OVERVIEW

The defendant, Maria Leticia Ruiz de Cruz, appeals her jury conviction of knowingly accepting and receiving counterfeit immigration documents as evidence of employment authorization in violation of 18 U.S.C. § 1546. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## FACTS AND PROCEDURAL HISTORY

Defendant was employed by a group of medical clinics in Southern California known as "Clinica Medica Familiar" ("CMF") from 1989 until 1993. She began working for CMF as an assistant clinic manager and was eventually promoted to the position of general administrator of the clinics. There were a total of seven clinics that defendant was responsible for supervising.

On May 8, 1991, defendant hired Dr. Aida Bernal, an anesthesiologist, to work at CMF as a medical assistant. Dr. Bernal is a citizen of Mexico who entered the United States on a tourist visa which did not authorize her to have employment in the United States. On March 31, 1993, after working for CMF for almost two years, Dr. Bernal's employment was terminated because she was unable to present CMF with adequate documentation for work authorization. In April 1993, Dr. Bernal was rehired by defendant after she presented defendant with a valid social security card in the name of Lourdes Cardenas. Approximately one month later, Dr. Bernal was again terminated after the personnel department at CMF found out that she was working under a false name.

Dr. Victor Campos, a medical doctor who is a resident of Mexico, began working for CMF in June 1991. Dr. Campos entered the United States on a tourist visa and did not have work authorization papers. About fifteen days after he was hired, Dr. Campos met with the defendant. Defendant told him to go to the personnel department and hand in the appropriate documentation for work authorization.

On August 4, 1994, defendant was indicted for knowingly accepting or receiving counterfeit immigration documents as evidence of employment authorization in violation of 18 U.S.C. § 1546 (counts one through thirteen of the indictment), knowingly encouraging an alien to remain in the United States in violation of 8 U.S.C. § 1324(a)(1)(D) (counts fourteen and fifteen of the indictment) and causing a false social security number to be presented with the intent to deceive in violation of 42 U.S.C. § 408(a)(7)(B) (count sixteen of the indictment).

On September 19, 1994, the district court set a trial date of November 8, 1994. On October 14, 1994, defendant filed a series of motions, seeking, among other things: (1) a continuance of trial; (2) dismissal of the indictment for prosecutorial misconduct and abuse of process; (3) dismissal of counts fourteen and fifteen of the indictment; and (4) discovery.

On November 1, 1994, the district court denied the requested continuance, granted the motion to dismiss counts fourteen and fifteen, and took the discovery issues under consideration. On November 3, 1994, the district court denied the defendant's motion to dismiss the indictment for prosecutorial misconduct and abuse of process, and granted defendant's motion for discovery, ordering the Government to produce certain files of the United States Department of Labor requested by defendant.

The trial began as scheduled on November 8, 1994. At trial, the Government called a number of current and former clinic employees as witnesses, including Dr. Bernal and Dr. Campos.[1]

Following trial, only three counts of the original indictment were left before the jury.[2] The jury convicted defendant of two counts of knowingly accepting or receiving counterfeit immigration documents as evidence of employment authorization in violation of 18 U.S.C. § 1546, as charged in counts six and thirteen of the indictment. The jury acquitted defendant of the charge of causing a false social security number to be presented with the intent to deceive in violation of 42 U.S.C. § 408(a)(7)(B) as charged in count sixteen.

On November 28, 1994, defendant made a motion for a new trial. The district court denied the motion.

On February 13, 1995, the district court held a sentencing hearing. The district court sentenced defendant to a term of probation for three years on each of counts six and

thirteen, to be served concurrently, as well as a fine of $1,500 and a special assessment of $100.

Defendant timely appeals her conviction and the district court's denial of her motion for a new trial. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## ANALYSIS

### A. Denial of Motions to Continue Trial

#### 1. Standard of Review

■ Denial of a motion to continue a trial is reviewed for abuse of discretion. *United States v. Torres–Rodriguez,* 930 F.2d 1375, 1383 (9th Cir.1991). An abuse of discretion will be found only where "denial of the continuance was arbitrary or unreasonable." *Id.* "To demonstrate reversible error, the defendant must show that the denial resulted in actual prejudice to [her] defense." *United States v. Mitchell,* 744 F.2d 701, 704 (9th Cir.1984).

#### 2. Denial of Motion to Continue Until After Election Day

■ Defendant argues that the district court erred in denying her motion to continue the trial until after election day because a continuance was necessary to prevent the jury from being unfairly swayed by highly inflammatory and negative propaganda against illegal immigrants.[3] We reject this argument.

First, the district court's denial of defendant's motion was not arbitrary or unreasonable. The district court stated that it understood that the trial was scheduled to start on election day. However, the district court pointed out that the immigration issue was going to be around for a "long, long time" and that the case had to be tried sometime. The district court believed that voir dire would be more than enough to take care of any danger of potential bias. Thus, the court

---

1. Defendant was charged in count six of the indictment with an offense pertaining to Dr. Bernal and in count thirteen with an offense pertaining to Dr. Campos.

2. During trial, the district court dismissed all remaining counts of the indictment except counts

six, thirteen and sixteen pursuant to Fed. R.Crim.P. 29.

3. The trial commenced on election day, and Proposition 187 dealing with illegal aliens was on the ballot in California that day.

granted counsel the opportunity to conduct voir dire to determine whether any potential trial jurors could not be fair and impartial in deciding the case.

It is clear that the district court considered the possible impact of Proposition 187 on the jurors, considered the alternatives that were available, and determined that the best alternative was to proceed with the trial and grant defense counsel the opportunity to conduct voir dire to determine whether any prejudice existed. This action by the district court was not unreasonable or arbitrary. Therefore, the district court did not abuse its discretion in denying defendant's motion for a continuance.

■ Second, even if we assume that the district court did err in denying defendant's motion to continue the trial, defendant has failed to show that any actual prejudice resulted from this denial. Thus, defendant has failed to demonstrate reversible error. *See Mitchell,* 744 F.2d at 704.

Defendant has not pointed to any evidence that the jury in this case judged her on anything but the evidence presented. There has been no showing that the jury was influenced in any way by the political debate over Proposition 187, or any other issue. The fact that the jury acquitted defendant of one of the three charges that was presented to them for decision further indicates a lack of prejudice toward defendant. *See United States v. Koon,* 34 F.3d 1416, 1446 (9th Cir. 1994) (A verdict acquitting the defendant of some of the charges against her "is indicative of the jury's ability to weigh the evidence without prejudice."), *cert. granted in part,* —— U.S. ——, 116 S.Ct. 39, 132 L.Ed.2d 920 (1995).

3. Denial of Motion to Continue to Allow Evaluation of Department of Labor Documents

■ Defendant claims that she was denied her right to a fair trial when the district court denied her motion for a continuance in order to evaluate the Department of Labor documents. She argues that had she been given an opportunity to further investigate the documents, the Government's case would have been weakened by defense counsel's use of the documents to impeach prosecution witnesses. We are not persuaded.

Defendant points to no actual prejudice that resulted from the denial of a continuance. She does not claim that she has, upon further investigation, found evidence that would have assisted her at trial. Instead, defendant makes a general claim that she was prejudiced because she was not given the opportunity to thoroughly analyze these documents. This general claim is insufficient to show the actual prejudice required to reverse a conviction. *See Mitchell,* 744 F.2d at 704. We therefore hold that the defendant was not denied her right to a fair trial when the district court denied her motion for a continuance.

B. *Prosecutor's Remarks During Closing Argument*

1. Standard of Review

■ "Prosecutorial comments to which defendant objects are reviewed for 'harmless error', while the standard of review for comments which defendant failed to interpose an objection is 'plain error'." *United States v. Endicott,* 803 F.2d 506, 513 (9th Cir.1986) (citing *United States v. Young,* 470 U.S. 1, 13 n. 10, 105 S.Ct. 1038, 1045 n. 10, 84 L.Ed.2d 1 (1985)).

2. Discussion

Defendant claims that two portions of the prosecution's rebuttal argument prejudiced her and denied her right to a fair trial. We will address each portion of the argument separately.

■ Defendant claims that she was prejudiced when the prosecutor argued that "it's time that it stops. It shouldn't be allowed to go on." Defense counsel did not object to these statements by the prosecutor. Thus, these statements are reviewed only for plain error. *Id.* at 513.

"Plain error" is a rigorous standard. It authorizes the reviewing court to correct only those errors that are "particularly egregious" and that "seriously affect the fairness, integrity or public reputation of judicial proceed-

ings." *Young,* 470 U.S. at 15, 105 S.Ct. at 1046 (quotations and citations omitted); *see also United States v. Olano,* 507 U.S. 725, 725–26, 113 S.Ct. 1770, 1773, 123 L.Ed.2d 508 (1993). The power to reverse for plain error is to be "used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *Young,* 470 U.S. at 15, 105 S.Ct. at 1046 (quotations omitted).

In the present case, the prosecutor's statements came at the very beginning of the Government's rebuttal argument. The prosecutor stated:

Ladies and gentlemen, toward the end of his remarks, [defense counsel] said that his client, Mrs. de Cruz, didn't want to be in this situation. I am sure that whatever else may be correct about this case, that is true; she does not want to be in this situation. She doesn't want to be in a United States courthouse; she doesn't want to be in a criminal trial, and she doesn't want to sit across the room from a jury of her peers.

She never expected, ladies and gentlemen, that she would be called to answer for the way she ran Clinica Medica Familiar. She never knew that anybody was paying attention. She didn't know that what she was doing was ever going to be the subject of any repercussions for her at all.

Ladies and gentlemen, it's time that it stops. It shouldn't go on. It shouldn't be allowed to go on.

Viewed in context, the prosecutor's statements do not constitute error, let alone plain error. They were not intended, as defendant argues, to convince the jury that conviction of defendant would stop the hiring of illegal immigrants. The prosecutor's statements were simply a way of saying that defendant had engaged in criminal conduct and should not be permitted to continue that criminal conduct. The statements do not undermine the fundamental fairness of the trial, nor do they contribute to a miscarriage of justice. Therefore, the statements do not constitute plain error. *See id.* at 16, 105 S.Ct. at 1046–47.

■ Defendant also claims that she was prejudiced when the prosecutor argued:

The reason why we have these laws is so that you, your neighbors and your friends and your relatives don't have to compete with illegal workers in the workplace.... It's not fair to other employees who follow the law; it's not fair to the people of the United States. These people take jobs that should belong to United States citizens.... [T]hat is the harm that was perpetrated by this defendant.

Defendant did object to these statements at the time they were made. Therefore, we review these statements for harmless error. *See Endicott,* 803 F.2d at 513.

■ When reviewing for harmless error, we must determine "whether allegedly improper behavior, considered in the context of the entire trial, including the conduct of the defense counsel, affected the jury's ability to judge the evidence fairly." *Id.* A verdict acquitting the defendant of some of the charges against her "is indicative of the jury's ability to weigh the evidence without prejudice." *Koon,* 34 F.3d at 1446.

■ The effect of improper prosecutorial comments may be cured if the district court gave appropriate curative instructions to the jury. *Endicott,* 803 F.2d at 513. In determining "whether the prosecutor's misconduct affected the jury's verdict," this court must look to the substance of the curative instruction and the closeness of the case. *United States v. Kerr,* 981 F.2d 1050, 1053–54 (9th Cir.1992).

The prosecutor's statements at issue in the present case came towards the end of the Government's rebuttal argument. This portion of the argument went as follows:

Ladies and gentlemen, this case isn't about a bunch of paperwork. You may think that this case[ ] is about a bunch of pieces of paper, and some files somewhere that don't mean anything. I suggest to you that it's not.

The reason we have laws that are designed to ensure that only legal residents get employment is to protect the people of the United States. The reason why we have these laws is so that you, your neigh-

bors and your friends and your relatives don't have to compete with illegal workers in the workplace.

Ladies and gentlemen of the jury, how many paychecks did Juan Carlos Hernandez pick up since he has been in the United States? He shouldn't have had one of those paychecks. He shouldn't be able to jump over a little hill down by San Ysidro to go to work for a company and make pretty good money, with nobody paying attention to it.

It's not fair to other employees who follow the law; it's not fair to people of the United States. These people take jobs that should belong to United States citizens that are lawful residents.

That is why we are here, ladies and gentlemen, that is the harm that was perpetrated by this defendant.

[COUNSEL FOR DEFENSE]: That is inappropriate, Your Honor.

THE COURT: Ladies and gentlemen, I'll say it for the last time, concentrate on the evidence and the jury instructions, and you'll be safe.

Go ahead.

We assume, *arguendo,* that these comments by the prosecutor were improper. However, we hold that the comments were harmless and therefore do not constitute grounds for reversal of the conviction.

First, these statements appear to have been an "invited response" to defense counsel's statements regarding the nature of the crime of which defendant was indicted.

In the closing argument, defense counsel attempted to minimize importance of the crimes of which defendant was indicted by indicating that no harm had been caused. Defense counsel stated:

This is a very strange case, ladies and gentlemen. Most criminal cases involve someone who is violent or greedy, violent people who do assaults or rapes or things of that sort; none of that is here. The nonviolent criminal cases involve people who are getting money out of someone, defrauding investors, defrauding stockholders, white collar criminals, savings and loan fraud executives, that kind of thing.

There is no evidence in this case that Mrs. de Cruz ever got a dime out of anything that is alleged. It's a very unusual criminal case.

This attempt to minimize the importance of the crimes may have raised a question in the jurors' minds as to the purpose of making the conduct at issue illegal.

In response, the prosecutor provided a brief explanation of the reasons for the criminal prohibition. When taken in context, it does not appear that the prosecutor's statements "unfairly prejudiced the defendant." *See Young,* 470 U.S. at 12, 105 S.Ct. at 1045. Instead, the remarks appear to have been "invited" by the defense and to have done no more than respond to the defense counsel's comments in order to "right the scale." *See id.* at 12–13, 105 S.Ct. at 1044–45.

Second, the district court immediately gave curative instructions which cured any prejudicial effect of the allegedly improper prosecutorial comments. *See Endicott,* 803 F.2d at 513. The district court instructed the jury to only consider the evidence and the jury instructions. The court had also repeatedly instructed the jury that argument of counsel was not evidence.

Third, the prosecutor's comments were limited to a brief explanation of the reasons for the criminal prohibition at issue, did not constitute an integral part of the prosecution's strategy, and the prosecutor moved on immediately to other areas after objection. *See United States v. Ray,* 731 F.2d 1361, 1368–69 (9th Cir.1984) (the Government's remarks about statutory purpose did not require reversal where the remarks "were relatively isolated and not an integral part of the prosecution's strategy").

Fourth, this does not appear to have been a close case, and defendant does not argue that it was. There was compelling evidence of defendant's unlawful activity. Defendant admitted that she believed that the employees she was hiring were illegal immigrants.

Finally, the fact that the jury acquitted defendant of one of the charges against her indicates that the jury was able to weigh the evidence without prejudice. *See Koon,* 34 F.3d at 1446.

Because there is no evidence that the allegedly improper prosecutorial comments affected the jury's ability to judge the evidence fairly, we hold that any misconduct was harmless. *See Endicott*, 803 F.2d at 513.

## C. *Refusal to Inform Jury that Eleven of the Sixteen Counts had been "Dismissed"*

### 1. Standard of Review

 A district court's formulation of jury instructions is reviewed for an abuse of discretion. *United States v. Vaandering*, 50 F.3d 696, 702 (9th Cir.1995). In reviewing jury instructions, the relevant inquiry is whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation. *United States v. Joetzki*, 952 F.2d 1090, 1095 (9th Cir.1991). Jury instructions, even if imperfect, are not a basis for overturning a conviction absent a showing they constitute an abuse of the trial court's discretion. *Id.*

### 2. Discussion

██ Defendant claims that she was prejudiced and denied her right to a fair trial when (1) the district court failed to instruct the jury that eleven of the sixteen counts that defendant had been charged with had been dismissed, and (2) the district court stated during defense counsel's closing argument that there was no evidence that the charges had been dismissed.

Prior to the case going to the jury for deliberation, all of the counts of the indictment against defendant had been dropped except counts six, thirteen and sixteen. The district court told both the prosecutor and defense counsel that it intended to inform the jury, without explanation, that "Counts 1 through 5, 7, 8, 9, 10, 11, and 12" were no longer before them, that only the three counts remained.

Defense counsel requested the district court to advise the jury that the counts had been dismissed. The district court declined the request, stating that such an instruction would call for needless speculation.

During defense counsel's closing argument, the following occurred:

[DEFENSE]: I could go on and on about the testimony.

There are three charges now, but as you know, there were other charges when you came here, and the rest of them have been dismissed.

[PROSECUTOR]: Your Honor, I request a sidebar.

THE COURT: No.

There is no evidence that anything was dismissed, [defense counsel].

[DEFENSE]: Well, they are no longer at issue, pardon me.[4]

Defendant claims that the district court's refusal to inform the jury that the charges had been dismissed prejudiced her and denied her right to a fair trial. This claim lacks merit.

First, the district court was not required to inform the jury that the dismissed charges were "dismissed." Ninth Circuit District Court Model Criminal Jury Instruction 2.12 states:

### DISMISSAL OF SOME CHARGES AGAINST DEFENDANT

At the beginning of the trial, the court described the charges against the defendant. Since that time, the charge of _____ has been disposed of and is therefore no longer before you.

Second, even if we assume that the district court's instruction regarding the dismissed charges was erroneous,[5] defendant has failed

---

**4.** Defense counsel claims that it "inadvertently" stated to the jury that the charges had been dismissed. Defense counsel further claims that even though it had been "truthful and that the charges had in fact been dismissed, the Court nonetheless proceeded to inform the jury that these charges had not been dismissed." As can be seen from the above-quoted passage, the district court only told the jury that there was no

evidence before it that the charges had been dismissed. Thus, defense counsel's claim "that the Court in effect misstated both law and fact to the jury," is not only without merit, but is also somewhat misleading.

**5.** The district court instructed the jury that:

to show prejudice resulting from the alleged error.

Defendant claims that the district court's actions "gave the jury the impression that the appellant was still facing the remaining charges," "prejudiced the appellant in that the jury was left with the impression that the appellant was an 'immoral woman,'" and left the jurors "with the impression that the evidence which pertained to the dismissed charges was also applicable to those charges which they were deliberating upon." We are not persuaded.

The district court's instruction adequately informed the jury that the remaining counts were not before them, that defendant was on trial only for counts six, thirteen and sixteen, and that the evidence could only be considered as it related to the charged counts or as it related to defendant's intent.[6]

Furthermore, there is no evidence that the jury was prejudiced against defendant or that it was left with the impression that defendant was "immoral." The jury acquitted defendant of one of the charges against her. This indicates that the jury weighed the evidence in coming to its verdict and that the jury was not prejudiced toward defendant. If the jury had been prejudiced, it is unlikely that it would have acquitted defendant of one of the three charges before it.

> The other announcement I think that I want to tell you is that the indictment as originally read to you has been modified, and there are just three counts that are before you, and at issue and for your decision today.

6. In jury instruction No. 10, the jury was told:

> You are here only to determine whether the defendant is guilty or not guilty of the charges in counts six, thirteen, and sixteen of the indictment. Your determination must be made only from the evidence in the case. The defendant is not on trial for any conduct or offense not charged in counts six, thirteen, and sixteen of the indictment. You should consider evidence about the acts, statements, and intentions of others, or evidence about other acts of the defendant, only as they relate to the charge against this defendant.

In instruction No. 11, the jury was told:

> You have heard evidence of other acts by the defendant. You may consider that evidence only as it bears on the defendant's intent and for no other purpose.

## D. Deliberate Indifference Instruction

### 1. Standard of Review

We review *de novo* whether a deliberate indifference instruction, sometimes called a *Jewell* instruction or a "conscious avoidance" instruction, should have been given. *United States v. Asuncion*, 973 F.2d 769, 772 (9th Cir.1992); *United States v. Sanchez–Robles*, 927 F.2d 1070, 1073 (9th Cir.1991).

> [A] *Jewell* instruction should not be given when the evidence is that the defendant had either actual knowledge or no knowledge at all of the facts in question. However, if there is evidence of both actual knowledge and of deliberate ignorance, a *Jewell* instruction is appropriate.

*United States v. Perez–Padilla*, 846 F.2d 1182, 1183 (9th Cir.1988) (citations omitted).

### 2. Discussion

■ Defendant claims that the district court erred by giving an instruction on deliberate indifference. We reject this claim.

The district court instructed the jury that the Government could prove that defendant acted knowingly by proving beyond a reasonable doubt that she knowingly closed her eyes to what otherwise would have been obvious to her.[7] The testimony of both Dr. Ber-

7. The complete verbal instruction is as follows:

> Now, the government may prove that the defendant acted knowingly by proving beyond a reasonable doubt that this defendant knowingly closed her eyes to what otherwise would have been obvious to her. No one can avoid responsibility for a crime by deliberately ignoring what is obvious to her.
>
> A finding beyond a reasonable doubt of an intent of the defendant to avoid knowledge would permit a jury to infer knowledge. Stated another way, a defendant's knowledge of a particular fact could be inferred from a deliberate or intentional ignorance or deliberate or intentional blindness to the existence of that fact.
>
> It is, of course, entirely up to you as to whether you find any deliberate ignorance or deliberate closing of the eyes, and the inferences to be drawn from [any] such evidence. You may not infer that a defendant had knowledge, however, from proof of a[ ] mistake[,] negligence, carelessness or a belief in an inaccurate proposition.

nal and Dr. Campos supported this instruction on deliberate indifference.

Dr. Campos testified that he told defendant that he did not have the documents personnel was asking for. Yet defendant still told him to go to personnel and hand in the documents. This testimony points either to defendant's actual knowledge or to defendant's awareness of a high probability that Dr. Campos was without employment authorization documents and would submit counterfeit documents to the personnel department. Thus, a *Jewell* instruction was appropriate with respect to the count pertaining to Dr. Campos. *See id.*

Dr. Bernal testified that defendant called her in March 1993 and told her that she had thirty days to present legal employment authorization documents or she would be terminated. Defendant called Dr. Bernal again approximately thirty days later and told Dr. Bernal that she was terminated. The reason for the termination was inadequate documentation. Dr. Bernal testified that she told defendant that she could be lent a social security number. She testified that she presented the social security card under the name of Lourdes Cardenas to defendant. Defendant then rehired Dr. Bernal. After Dr. Bernal was terminated about a month later, Dr. Bernal testified that defendant hired her to work at a clinic that defendant was opening even though Dr. Bernal told defendant that her social security number was not valid for employment.

Dr. Bernal's testimony points either to defendant's actual knowledge or defendant's awareness of the high probability that Dr. Bernal did not have valid employment documents when she was hired. Thus, a *Jewell* instruction was also appropriate with respect to the count pertaining to Dr. Bernal. *See id.*

### E. *Department of Labor Documents*

#### 1. Standard of Review

 We review a district court's discovery rulings for an abuse of discretion. *United States v. Mandel,* 914 F.2d 1215, 1219 (9th Cir.1990). "To reverse a conviction for a discovery violation, we must find not only

that the district court abused its discretion, but that the error resulted in prejudice to substantial rights." *United States v. Baker,* 10 F.3d 1374, 1398 (9th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 330, 130 L.Ed.2d 289 (1994). To justify reversal of a conviction for a discovery violation, the defendant must show a likelihood "that the verdict would have been different had the government complied with the discovery rules." *Id.* at 1398 n. 8.

#### 2. Discussion

 Defendant claims that she was denied her right to a fair trial when the prosecutor engaged in misconduct by suppressing impeachment documents. We are not persuaded.

On October 14, 1994, defendant filed a total of at least eighteen motions, including a general discovery motion, a motion for exculpatory material, a motion for Jenks Act material, and a motion to dismiss for prosecutorial misconduct.

On November 1, 1994, the district court held a hearing at which it took the motion for discovery inspection of the Department of Labor files into consideration and ordered further briefing by the Government on what would be entailed in order to obtain the documents being requested by defendant.

On November 3, 1994, the district court granted defendant's motion for discovery of the Department of Labor files. The Government delivered the majority of the files that the district court ordered it to produce on November 5, 1994, within two days of the order. The remaining files, which were being forwarded from the Department of Labor, were delivered as soon as they arrived from the Department of Labor.

Despite the Government's quick response to the discovery order, defendant claims that the Government engaged in misconduct because the Government did not produce the Department of Labor documents when initially requested by defense counsel. However, the Government claims that it did not produce the Department of Labor documents until ordered to do so by the district court because it believed the documents were not

discoverable under Fed.R.Crim.P. 16. Once the district court ordered the Government to produce the documents, the Government promptly complied.

The fact that the district court had to give the motion for discovery further consideration and requested further briefing on the issue to assist it in making its decision indicates that this was not a case of bad faith withholding of information by the Government. To the contrary, the discoverability of these files appears to have been a close issue and the Government, reasonably believing that the documents were not discoverable, waited for the court to make a final decision. Thus, the Government's conduct did not constitute a violation of any discovery rules, let alone rise to the level of "prosecutorial misconduct."

Furthermore, even if we assume, *arguendo*, that the prosecutor engaged in a discovery violation by failing to produce the Department of Labor documents when initially requested by defense counsel, defendant has failed to demonstrate that she was prejudiced as a result. Therefore, the alleged discovery violation does not justify reversal of defendant's conviction. *See Baker*, 10 F.3d at 1398.

Defendant claims that she was prejudiced because she was not given sufficient time to analyze the documents, that had she had the documents earlier she would have had an opportunity to establish who had committed alleged forgeries in the documents, and that discovery of who the proponents of the alleged forgeries were would have been useful in impeaching prosecution witnesses. However, defendant fails to point to any actual prejudice. She does not state which prosecution witness she could have impeached with further investigation. She does not point to any new evidence discovered with further investigation that would have assisted her defense at trial.

Defendant has failed to show a likelihood that the verdict would have been different

had the Government produced the documents when they were first requested. *See id.* at 1398 n. 8. Therefore, we hold that any failure to timely produce the documents did not prejudice defendant and thus cannot justify reversal of defendant's conviction. *See id.*

### F. *Ignorance of Law*

#### 1. Standard of Review

■ A district court's decision to preclude a mistake of law defense is reviewed *de novo*. *United States v. Aguilar*, 883 F.2d 662, 671 (9th Cir.1989), *cert. denied*, 498 U.S. 1046, 111 S.Ct. 751, 112 L.Ed.2d 771 (1991).

#### 2. Discussion

■ Defendant claims that the district court erred because it did not allow her to testify regarding her ignorance of the law. This claim lacks merit.

Defendant was convicted of "knowingly receiving and accepting forged documents" in violation of 18 U.S.C. § 1546. Defendant sought to introduce facts which established that she did not know that her conduct violated federal law. This is a classic mistake or ignorance of law argument, and as such, it is not a valid defense. *See id.* at 673 (holding that mistake or ignorance of law is not a valid defense). Therefore, the district court properly excluded evidence of defendant's ignorance of the illegality of her conduct. *See id.* at 674.

### G. *Government Contact with Defendant's Cousin*

■ Defendant argues that the Government engaged in outrageous conduct when it contacted her cousin, Dr. Rubin Ruiz, without her consent. In her brief in this court, defendant seeks only a new trial. Therefore, we address only whether the Government's conduct requires reversal of the conviction and remand for a new trial.[8]

The conduct at issue is the Government's action in contacting defendant's cousin in or-

---

8. Because defendant does not request dismissal of the indictment on appeal, defendant has waived this issue. Therefore, we need not discuss whether the Government's conduct constituted conduct which was "so grossly shocking and so outrageous as to violate the universal sense of justice" and thus require dismissal of the indictment. *See United States v. Allen*, 955 F.2d 630, 631 (9th Cir.1992) (quotations omitted).

der to advise the cousin that the prosecution did not believe that defendant's attorney was properly conveying plea offers. It is undisputed that this conduct by the Government was improper. (While we use the term "prosecutorial" misconduct, this label encompasses actions of Government agents for which the "prosecution" must account. The contact here in question was not made by an Assistant United States Attorney, but by an Immigration and Naturalization Service special agent.) However, this does not end our inquiry. To reverse a conviction for prosecutorial misconduct, the improper conduct must have affected the jury's ability to judge the evidence fairly. *See Endicott,* 803 F.2d at 513.

Defendant has failed to demonstrate any prejudice suffered as a result of the Government's misconduct. When the district court asked defense counsel to identify specifically what substantial prejudice was suffered by defendant as a result of the Government's misconduct, defense counsel was unable to identify any actual prejudice, and admitted that the claims of prejudice to defendant were at best speculative.

On appeal, the only claim of prejudice that defendant makes is a general claim that the Government conduct "in effect destroyed the confidence the appellant had in her attorney." This general claim is insufficient to show that the Government's improper conduct prejudiced defendant or in any way affected the jury's ability to judge the evidence fairly. Defendant has therefore failed to show that her conviction should be reversed based on the Government's improper conduct. *See Endicott,* 803 F.2d at 513.

## H. *Cumulative Error*

Defendant claims that the combined prejudice resulting from the alleged errors resulted in a denial of her right to a fair trial. We are not persuaded.

"Although individual errors looked at separately may not rise to the level of reversible error, their cumulative effect may nevertheless be so prejudicial as to require reversal." *United States v. Necoechea,* 986 F.2d 1273, 1282 (9th Cir.1993). However, the fact that errors have been committed during a trial does not mean that reversal is required. "[W]hile a defendant is entitled to a fair trial, [she] is not entitled to a perfect trial, for there are no perfect trials." *United States v. Payne,* 944 F.2d 1458, 1477 (9th Cir.1991) (quotations omitted), *cert. denied,* 503 U.S. 975, 112 S.Ct. 1598, 118 L.Ed.2d 313 (1992).

We have held that the district court did not commit error. Therefore, there is no cumulative court error. Furthermore, even if we assume that the district court erred on one or more of the issues, any error is, at best, marginal. Therefore, the cumulative effect of such error cannot be deemed so prejudicial that reversal is warranted. *See United States v. Karterman,* 60 F.3d 576, 580 (9th Cir.1995) ("Because each error is, at best, marginal, we cannot conclude that their cumulative effect was 'so prejudicial' to [defendant] that reversal is warranted.").

Finally, the prosecutorial misconduct that is present in this case did not result in prejudice to defendant. Therefore, there is no combined prejudice warranting reversal.

## CONCLUSION

Defendant's convictions of knowingly accepting or receiving counterfeit immigration documents as evidence of employment authorization in violation of 18 U.S.C. § 1546, as charged in counts six and thirteen of the indictment, are affirmed. The denial of defendant's motion for a new trial is also affirmed.

AFFIRMED.