131 F.3d 149
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Eric FULLER, Defendant-Appellant.
 No. 96-50311.
 United States Court of Appeals, Ninth Circuit.
 Argued and submitted Oct. 7, 1997.
Decided Nov. 17, 1997.
 
 Appeal from the United States District Court for the Southern District of California, No. CR 95-1616-K; Judith N. Keep, District Judge, Presiding.
 Before: O'SCANNLAIN, FERNANDEZ, and THOMAS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Eric Fuller appeals his conviction following a 14-day jury trial for bank fraud (18 U.S.C. §§ 1344 and 2), making false statements in loan applications (18 U.S.C. § 1014), and money laundering (18 U.S.C. §§ 1957 and 2). We affirm.
 
 
 3
 The facts underlying this action are known to the parties and we shall not repeat them here.
 
 
 4
 * Fuller first claims that the evidence was insufficient to support his bank fraud convictions or Counts 1 through 5 because the evidence failed to establish that he overstated his gross one bank that his gross monthly income was $115,000, while later that very same day, he told another bank the amount was $105,000.
 
 
 5
 We conclude that the evidence was plainly sufficient for a rational trier of fact to find beyond a reasonable doubt the essential elements of bank fraud, and specifically, that Fuller overstated his gross monthly income.
 
 II
 
 6
 Fuller next claims that the prosecutors engaged in misconduct during cross-examination and closing argument warranting reversal.
 
 
 7
 Although the adversary system allows prosecutors to "prosecute with earnestness and vigor," prosecutors must "refrain from improper methods calculated to produce a wrongful conviction...." U.S. v. Young, 470 U.S. 1, 7 (1985) (quoting Berger v. U.S., 295 U.S. 78 (1935)). However, inappropriate prosecutorial misconduct, standing alone, does not warrant the reversal of a criminal conviction obtained in an otherwise fair proceeding. Id. at 11. Instead, allegations of prosecutorial misconduct must be viewed in the context of the entire trial in order to determine whether the behavior in question amounted to prejudicial error. Id. Because Fuller failed to object to the majority of the statements he now claims constitute prosecutorial misconduct, those statements are reviewed for plain error. Id. at 6, 14-20. The statements to which he did object are reviewed for harmless error. See U.S. v. Laurins, 857 F.2d 529, 539 (9th Cir.1988).
 
 
 8
 The prosecutor unquestionably made some hard hits against Fuller but, viewed in the context of the 14-day trial, the challenged statements were not such as to undermine the fundamental fairness of the trial and contribute to a miscarriage of justice. See Young, 470 U.S. at 16. There was no plain error here. Id.
 
 
 9
 Regarding the comments to which Fuller did object, in reviewing for harmless error, we must determine "whether allegedly improper behavior, considered in the context of the entire trial, including the conduct of the defense counsel, affected the jury's ability to judge the evidence fairly." U.S. v. de Cruz, 82 F.3d 856, 862 (9th Cir.1996) (quoting U.S. V. Endicott, 803 F.3d 506, 513 (9th Cir.1986)). An error is harmless "if it is more probable than not that the prejudice resulting from the error did not materially affect the verdict" U.S. v. Lui, 941 F.2d 844, 848 (9th Cir.1991). After a careful review of the record, we conclude that the allegedly improper behavior did not materially affect the verdict. Moreover, a curative instruction was given at Fuller's request by the district court at the close of argument. The court. cautioned the jury that "[a]rguments and statements by lawyers are not evidence," and that they, the jury, must decide the case solely on the evidence received at trial. " 'Ordinarily [,] cautonary instructions' or other 'prompt and effective action[s] by the trial court' are 'sufficient to cure the effects of improper comments,' " because juries "are presumed to follow such cautionary instructions." McChristian, 47 F.3d at 1507-08 (quoting U.S. v. Enriguez-Estrada, 999 F.2d 1355, 1361 (9th Cir.1993)).
 
 
 10
 In light of the foregoing, it is clear that any error committed by the prosecution was harmless; consequently, reversal is not warranted.
 
 III
 
 11
 Fuller next challenges for the first time on appeal the district court's jury instruction on the crime-fraud exception to the attorney-client privilege, claiming it effectively eliminated the government's burden of proving knowledge or intent with respect to the bank fraud counts.
 
 
 12
 To preserve the right to appellate review of a jury instruction, the defendant must have objected properly in the district court, stating distinctly the matter to which he objects and the grounds for the objection. See U.S. v. Varela, 993 F.2d 686, 688 (9th Cir.1993). A general objection to an instruction does not suffice to preserve the issue on appeal. Id. Fuller failed to raise before the district court the objection he raises here, even though the district court gave him an opportunity to propose his own instruction on the crime-fraud exception or, in the alternative, to inform the court if he thought its instruction misstated the relevant law. Fuller failed to take advantage of this opportunity, proposing the exact same instruction ultimately given by the district court--including the language to which he objects here. Notwithstanding the foregoing, because it does not appear that Fuller waived or voluntarily relinquished a "known right," we review the challenged instruction for plain error. See U.S. v. Perez, 116 F.3d 840, 844-1176 (9th Cir.1997) (en banc). federal crime punishable by fine or imprisonment, or both, to knowingly make any false statement concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1014." The government also admitted owner-occupancy affidavits in connection with two of the applications on which Fuller swore he would occupy the properties in question. It was demonstrated at trial that Fuller never occupied or intended to occupy any of these properties
 
 
 13
 Fuller argues, in part, that because bank personnel checked the "owner-occupancy box" on the applications, he did not make a false statement in violation of 11 U.S.C. § 1014. However, by signing the applications, Fuller adopted the statements therein as his own and represented that: such statements were true. See U.S. v. Bellucci, 995 F.2d 157, 159 (9th Cir.1993). Further, notwithstanding his claims to the contrary, Fuller presented no evidence tending to demonstrate that any of the banks consented to his owner-occupancy misrepresentations. See U.S. v. Unruh, 855 F.2d 1363, 1367-70 (9th Cir.1987).
 
 
 14
 From the evidence presented at trial, it is clear that a rational trier of fact could have found beyond a reasonable doubt that Fuller made false statements on loan applications in violation of 18 U.S.C. § 1014. See Jackson, 443 U.S. at 319.
 
 V
 
 15
 FulLer next claims that the evidence was insufficient to sustain his conviction in Count 12 for bank fraud in violation of 18 U.S.C. §§ 1344 and 2. This claims lacks merit.
 
 
 16
 Contrary to Fuller's assertions, it is apparent from the record that he made a number of affirmative misrepresentations to HomeFed Bank regarding, inter alia, the identity of the actual purchaser of the property, the existence of a higher offer from Torres-Gonzalez, the structure of the double escrow transaction and the ultimate disposition of the sale proceeds. Fuller's claim that HomeFed was aware of the higher offer but chose instead to accept the lower offer is completely unsupported by the evidence. There is no proof that HomeFed consented to any aspect of the actual transaction carried out by Fuller. See Unruh, 855 F.2d at 1367-70.
 
 
 17
 A careful review of the record demonstrates that there was indeed sufficient evidence for a rational trier of fact to find the essential elements of bank fraud beyond a reasonable doubt. See Jackson, 443 U.S. at 319.*
 
 VI
 
 18
 Lastly, Fuller argues that he was improperly charged with both bank fraud in Count 12 and money laundering in violation of 18 U.S.C. § 1957 in Counts 13 and 14 because the money laundering offenses were not separate and distinct from the underlying offense that generated the proceeds laundered. Because Fuller did not raise this objection to the indictment in the district court, we review for plain error. See U.S. v. Morris, 827 F.2d 1348, 1351 (9th Cir.1987).
 
 
 19
 Fuller is correct that the money laundering counts must be separate and distinct from the underlying bank fraud offense. See U.S. v. Estacio, 64 F.3d 477, 480-31 (9th Cir.1991). He makes much of the fact that the funds were transferred simultaneously to HomeFed and his relatives out of the double escrow, citing U.S. v. Pretty, 98 F.3d 1213 (10th Cir.1996), for the proposition that to constitute separate crimes, the underlying offense must be completed before the monetary transaction is carried out. Fuller's reliance on this case is misplaced, however. Pretty itself captions that the " 'follows in time' comment was intended to express merely the separateness of the money laundering and the underlying crime for double jeopardy purposes, not a strict temporal relationship .... [w]e could envision scenarios where money laundering and the underlying illegal activity occur simultaneously." Pretty, 98 F.3d 1220 (citations omitted). In any event, the case before us need not be the scenario envisioned by our sister circuit because Fuller's bank fraud activity, his numerous affirmative misrepresentations to HomeFed, occurred largely in the months preceding the money laundering activity. "Accordingly, there existed separable underlying unlawful activity that gave rise to the proceeds charged in the indictment...." Estacio, 64 F.3d at 481. There was no inconsistency in charging both bank fraud and money laundering.
 
 
 20
 For the foregoing reasons, we affirm Fuller's conviction on all counts.
 
 
 21
 AFFIRMED.
 
 THOMAS, Circuit Judge, Concurring:
 
 22
 I agree that the prosecutor's conduct: did not create reversible error. That determination, however, does not mean that it comported with the standards of professional responsibility we expect of United States Attorneys
 
 
 23
 To be sure, federal criminal litigation is not for the faint-hearted. We anticipate vigorous prosecution and defense. Because the stakes are usually high, we understand an occasional rhetorical excess. When that occurs, we must weigh it carefully in the context of the entire trial to determine whether it affected the verdict or whether the statement was a reflexive counterpunch to an equally provocative lead. More often than not, we conclude, as we have in this appeal, that the improper remarks do not require reversal.
 
 
 24
 However, the conduct in this case requires special comment because the prosecutors involved seem to adhere to the philosophy that if it's not reversible, it's proper. Not so.
 
 
 25
 The fundamental guidelines for proper argument are well-settled. "The rule that a prosecutor may not express his personal opinion of the defendant's guilt or his belief in the credibility of witnesses is firmly established." United States v. McKoy, 771 F.2d 1207, 1210-11 (9th Cir.1985). "Prosecutors may not make comments calculated to arouse the passions or the prejudices of the jury." United States v. Koon, 34 F.3d 1416, 1443 (9th Cir.1994). References to public outrage which could appeal to prejudice are improper. Id. at 1445.
 
 
 26
 Here, the prosecutor referred to one witness as "that dude with the green suit and purple hair." He disparaged the defendant's mother, a respected attorney who also testified at trial, by making derisive references to her "apron" and otherwise attempted to attack her credibility by sexual sterotyping. He caustically derided her professional award from the Los Angeles Anti-Defamation League (arguing to the jury that it was "outrageous" to mention that "your mom is woman of the year for some club"). The prosecutor referred to the defendant as "beyond sleazy and unethical" and contended that the "first victim of his activity was the truth."
 
 
 27
 The theme of the prosecution's case was not bank fraud, but the evils of the legal profession. The government assailed the attorney-client privilege, asking one witness if it were not true that "the public perception of what the attorney/client relationship is, is perceived as.. dishonest" and commanding the jury in closing arguments they "should forget about all this nonsense about confidences and secrets." The government cited with approval the scene in the motion picture Jurassic Park in which a lawyer is killed, and actually spent time questioning a witness about it.
 
 
 28
 It's difficult to explain how a fictional character who gets consumed by a dinosaur is probative of real estate bank fraud, but the government staunchly defended it at oral argument and actually repeated the "apron" reference in discussing attorney Majorie Fuller's trial testimony. Thus, one can hardly dismiss the comments as made in the heat of battle.
 
 
 29
 When prosecutors resort to trial by prejudice and insinuation, they demean the system and sadly underestimate the competence of juries. In this case, the comments were particularly, and unfortunately, demeaning to women lawyers. The use of prejudicial "sound bites" is often a sign of a weak case, and the evidence on several of the counts in this case was extremely thin.
 
 
 30
 My purpose in writing separately is to remind the United States Attorney of the Supreme Court's words over a half century ago in Berger v. United States, 295 U.S. 78, 88 (1935):
 
 
 31
 The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor--indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 *
 Fuller's contention that the details of the higher offer were confidential and therefore protected by the attorney-client privilege is also without merit. The attorney-client privilege does not extend to any communication in furtherance of intended, or presert, continuing illegality. Consequently, Fuller's affirmative misrepresentations to HomeFed were not justified. See In Grand Jury Proceedings, Appeal of the Corporation, 87 F.3d 377, 381 (9th Cir.1996)