141 F.3d 1180
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
United States of America, Plaintiff-Appellee,
v.
Lin Xue FEI, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Hu Min SHUN, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Jian Li LIN, aka Jing Li Lin, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Tien Sin JIANG, aka Zhen Zing Chen, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Ching LIN, aka Huey Lin, Defendant-Appellant.
 No. 96-30237, 96-30238, 96-30239, 96-30240, 96-30261.
DC No. CR-95-00732-04-TSZ.
DC No. CR-95-00732-05-TSZ.
DC No. CR-95-00732-03-TSZ.
DC No. CR-95-00732-02-TSZ.
DC No. CR-95-00732-01-TSZ.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 8, 1997.
Decided Mar. 30, 1998.
 
 1
 Appeal from the United States District Court for the Western District of Washington Thomas S. Zilly, District Judge, Presiding.
 
 
 2
 Before WRIGHT and SCHROEDER, Circuit Judges, and SCHWARZER,** District Judge.
 
 
 3
 MEMORANDUM*
 
 
 4
 We deal briefly with the contentions not disposed of in the published opinion filed today in this appeal, and affirm on all.
 
 I. JURISDICTION
 
 5
 Jiang contends that because the government failed to establish he was eighteen at the time of the commission of the offenses, the district court lacked jurisdiction to try him as an adult. The district court held a hearing on the matter during which the government presented evidence showing that Jiang had an extensive history of providing authorities with dates of birth that showed him to be just under eighteen at the time of apprehension. This evidence, coupled with Jiang's failure to provide the court with credible or reliable evidence of his age, resulted in the district court's conclusion that Jiang could be tried as an adult. The district court properly denied Jiang's motion to dismiss for lack of jurisdiction. See United States v. Frasquillo-Zamosa, 626 F.2d 99, 101 (9th Cir.1980) (noting that the age of the accused, particularly where the accused is an alien, is a fact which may be peculiarly within the knowledge of the accused and not susceptible to independent proof).
 
 
 6
 Nor is there merit to Jiang's contention that the district court should have submitted the issue of his age to the jury. Age is not an element of the crimes of which he was convicted nor is it an affirmative defense. See Frasquillo-Zamosa, 626 F.2d at 99, 101-102.
 
 
 7
 II. CHALLENGES TO THE UNDERLYING CONVICTIONS[1]
 
 
 8
 Appellants contend that the district court erred by denying their motion to suppress statements and evidence obtained in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellants' contention is based on their argument that alienage questions posed by an INS agent prior to receiving Miranda warnings constituted impermissible interrogation. However, even if these questions amounted to interrogation, no Miranda violation occurred. Appellants were not in custody at the time the questions were posed, see California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (in determining whether subject is in "custody" for purposes of Miranda, relevant inquiry is whether there was a formal arrest or restraint on freedom to a degree associated with formal arrest), but were detained twenty to thirty minutes for the purpose of determining their identity. See United States v. Mondello, 927 F.2d 1463, 1471 (9th Cir.1991) (detention exceeding thirty minutes did not rise to level of arrest because it lasted no longer than necessary to "effectuate the purpose of the stop."). In any event, any error in admitting the statements made to the INS agent would have been harmless beyond a reasonable doubt. See United States v. Khan, 993 F.2d 1368, 1376 (9th Cir.1993). Besides the fact that appellants themselves testified they were illegal aliens as part of their duress defense, their convictions for hostage taking are independently supported by evidence of the victims' alienage status. See 18 U.S.C. § 1203 (requiring that defendant or victim is not a national of the United States).
 
 
 9
 Appellants contend that the trial court erred when it denied their request for a continuance. However, in order to constitute reversible error, appellants must show that the court's denial of the continuance resulted in actual prejudice to their defense. See United States v. Nguyen, 88 F.3d 812, 819 (9th Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 443, 136 L.Ed.2d 339 (1996). This they have not done. Although appellants argue that the continuance was necessary on the grounds that the government had not turned over certain physical and scientific evidence until approximately a week before trial, they do not explain "how the government's alleged tardiness resulted in actual prejudice to their case." See United States v. Robertson, 15 F.3d 862, 873 (9th Cir.1994), rev'd on other grounds, 514 U.S. 669, 115 S.Ct. 1732, 131 L.Ed.2d 714 (1995). To the extent appellants based their continuance request on the government's failure to turn over Jencks material, see 18 U.S.C. § 3500(a), they were not entitled to this material before trial. See United States v. Dischner, 974 F.2d 1502, 1522 (9th Cir.1992).
 
 
 10
 Appellants contend that the government failed to fulfill its obligations under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), when it delegated responsibility for searching New York files to the Assistant United States Attorneys (AUSA) and agencies in that state. However, in asking the New York agencies to search their files for Brady materials, the government specifically informed them that appellants were relying on a duress defense and were indicating that they had been coerced by individuals in New York and Seattle. In response, each New York office sent back sworn affidavits by the prosecutors stating that the requested searches were conducted and no Brady materials existed. See United States v. Michaels, 796 F.2d 1112, 1116 (9th Cir.1986) (noting that Brady requires disclosure of material evidence; it does not "provide defense counsel with unlimited discovery of everything known by the prosecutor").
 
 
 11
 To the extent appellants suggest the Seattle prosecutors had a duty to personally search the files of the New York agencies, the contention lacks merit. The authorities cited by appellants do not preclude the government from delegating a Brady search to the AUSA in possession of the targeted files. See United States v. Alvarez, 86 F.3d 901, 903 (9th Cir.1996), cert. denied, 117 S.Ct. 768 (1997) (holding only that it was improper for AUSA to delegate Brady search of files within district to non-attorney police investigator); United States v. Bryan, 868 F.2d 1032, 1037 (9th Cir.1989) (holding only that once a federal prosecutor has knowledge of and access to exculpatory information from outside the district, he has a duty to disclose it to the defense).
 
 
 12
 Appellants contend that the district court erred by denying their motions to take foreign depositions of family members who resided in China. Appellants alleged that family members would testify that Fei Lin and Hu had themselves been smuggled to the United States by the Snakeheads and that the Snakeheads had threatened them and their families with harm unless they paid the ransom demands. The district court denied appellants' motions because (1) appellants failed to make a showing that these threats were made during the time of the alleged conspiracy and (2) even if appellants did receive permission from the Chinese government to take the depositions, which appeared unlikely, it was highly unlikely that appellants would be able to secure permission before trial. The district court did not abuse its discretion in denying the motions. See United States v. Zuno-Arce, 44 F.3d 1420, 1424 (9th Cir.1995) (no abuse of discretion to deny taking of foreign depositions where insufficient showing of relevance and motion made close to trial date). Nor did the district court err by denying appellants' motion to admit statements of the families via telephone calls. See Fed.R.Crim.P. Rule 26 (requiring testimony of witnesses to be taken orally in open court absent statutory or rule-based exception).
 
 
 13
 Appellants' contention that 21 U.S.C. § 1203 violates Equal Protection because it arbitrarily classifies offenders and victims on the basis of alienage is foreclosed by United States v. Lopez-Flores, 63 F.3d 1468, 1475 (9th Cir.1995), cert. denied, 516 U.S. 1082, 116 S.Ct. 794 & 795, 133 L.Ed.2d 743 (1996). To the extent they argue that Lopez-Flores is wrongly decided, we note that a panel of this court not sitting en banc lacks authority to overturn prior Ninth Circuit precedent. See United States v. Lucas, 963 F.2d 243, 247 (9th Cir.1992). Also with regard to section 1203, appellants' contention that the district court erred by instructing the jury that the definition of "national of the United States" "does not include aliens," lacks merit. Contrary to their assertions, a "national of the United States" does not include a person who illegally enters the United States and subjectively considers himself a person who owes permanent allegiance to this country. See United States v. Sotelo, 109 F.3d 1446, 1447-48 (9th Cir.1997); 22 U.S.C. § 1621(c).
 
 
 14
 Appellants contend that the district court erred by admitting audiotape recordings of four ransom calls made to victim Jane Doe's family because there was an inadequate showing of authenticity and chain of custody. However, at trial Jane Doe identified Fei Lin's voice in the first call and Hu's voice in the remaining three calls. She also identified her family members in all calls and her family referred to her by name in the first and fourth call. Accordingly, the government properly authenticated the tapes. See United States v. Torres, 908 F.2d 1417, 1425 (9th Cir.1990) (holding tapes sufficiently authenticated where agent testified he recognized voice of defendant and defendant referred to in tapes by her first name). To the extent appellants allege defects in the chain of custody, they were relevant to the weight, not the admissibility of the evidence. See United States v. Matta-Ballesteros, 71 F.3d 754, 769 (9th Cir.1995), cert. denied, 117 S.Ct. 968 (1997).
 
 
 15
 Nor is there merit to appellants' contention that the district court erred by admitting a transcript of the tapes prepared by Jane Doe and an FBI translator and allowing Jane Doe to read a portion of that transcript. Appellants argue that a second transcript, prepared by a New York translator, impeached the accuracy of Jane's transcript. That second transcript was admitted into evidence but the court ruled it would not be read to the jury unless the defense disputed the accuracy of Jane's translation. Because the defense did not do so, or offer an alternative transcript of their own, the court was within its discretion in allowing the use of Jane's translation. See United States v. Fuentes-Montijo, 68 F.3d 352, 355 (9th Cir.1995), supp. by 74 F.3d 1247 (9th Cir.1996).
 
 
 16
 Appellants contend that the district court prejudicially erred by admitting testimony regarding crimes not committed by them. At trial, the victims were permitted to testify that appellants had told them during their captivity that they would suffer the same brutal fate as victims of simultaneously occurring kidnappings in New York if their families did not pay. This testimony was properly admitted in that it showed what transpired during the victims' captivity and implied that appellants were in a position to exercise authority over them as opposed to operating under duress. See Matta-Ballesteros, 71 F.3d at 759.
 
 
 17
 Appellants raise multiple allegations of prosecutorial misconduct to which they interposed objections at trial. However, none rise to the level of prejudicial error. See United States v. deCruz, 82 F.3d 856, 861 (9th Cir.1996) ("prosecutorial comments to which defendant objects are reviewed for harmless error").
 
 
 18
 The record belies appellants' contention that the government improperly commented upon their right to remain silent in violation of Doyle v. Ohio, 426 U.S. 610, 617, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). In accordance with the district court's ruling, the government limited its references to appellants' silence prior to receiving their Miranda warnings. See United States v. Harris, 726 F.2d 558, 559 (9th Cir.1984) (no Doyle error where prosecution argued inferences from silence to impeach testimony where silence was not the result of Miranda warnings).
 
 
 19
 Appellants claim they were prejudiced when the prosecution improperly commented on their future dangerousness. However, the record shows that the prosecution was simply arguing fair inferences from appellants' own testimony indicating that as long as appellants owed the Snakeheads a debt, they would continue to commit crimes at the direction of the Snakeheads. See deCruz, 82 F.3d at 862 (concluding no error where prosecution's statements were simply a way of saying that defendant had engaged in criminal conduct and should not be permitted to continue that criminal conduct); United States v. Hinton, 31 F.3d 817, 825 (9th Cir.1994).
 
 
 20
 Appellants claim that they were prejudiced when the prosecution compared them to notorious criminal groups and the Snakehead organization to a nine-headed monster, during closing remarks. Besides the fact that the trial court instructed the jury to disregard the references to other criminal groups, see deCruz, 82 F.3d at 862 (effect of improper comments may be cured by appropriate curative instructions), the comments did not amount to prejudicial misconduct. See United States v. Rewald, 889 F.2d 836, 861-62 (9th Cir.1989) (rejecting contention that government's reference to nine-headed monster amounted to misconduct); United States v. Endicott, 803 F.2d 506, 513 (9th Cir.1986) (noting that "[c]ounsel may be allowed some latitude in illustrating their arguments by reference to notorious or historical events without being automatically found to have committed irreparable prejudice").
 
 
 21
 Appellants claim they were prejudiced by the prosecution's reference in closing to exhibit 41. The exhibit was used at trial to identify appellants' coconspirators but was not admitted into evidence. The prosecutor's isolated verbal reference, followed by the court's admonishment, did not constitute prejudicial misconduct. See Cruz, 82 F.3d at 863.
 
 
 22
 Nor did the prosecution improperly vouch for the victim witnesses. Instead, the prosecution argued that the victims, contrary to the defense's assertions, had no motive for fabricating their testimony. See United States v. Sarno, 73 F.3d 1470, 1497 (9th Cir.1995) (not improper vouching where prosecutor said "[t]here is no reason for him to make this up. You hear him, he came to the FBI with this information"); see also United States v. Sayetsitty, 107 F.3d 1405, 1409 (9th Cir.1997) (prosecution's comment that defense counsel's characterization of government's investigation as a "web of deception" was untrue, was "invited reply" to defense's argument).
 
 
 23
 Finally, appellants claim that they were prejudiced when the government elicited from a witness that she knew New York conspirator "Chen" because she had been previously kidnapped by him in 1993. Apart from the fact that the court instructed the jury to disregard the 1993 kidnapping, Hu himself testified that "Chen" had held him captive in New York in 1994; had ordered him to beat a man held in the apartment; and had directed him to come to Seattle for the instant crimes. Accordingly, any reference to an unrelated kidnapping committed by Chen was undoubtedly harmless. See deCruz, 82 F.3d at 863.
 
 III. CLAIMED SENTENCING ERRORS
 
 24
 Appellants contend that the district court erred by applying a three-level enhancement under USSG § 2A4.1(b)(5) because: (1) the Sentencing Commission acted contrary to Congressional intent when it enacted the enhancement; and (2) there was insufficient evidence to support the imposition of the enhancement. These contentions lack merit.
 
 
 25
 USSG § 2A4.1 provides "[i]f the victim was sexually exploited, increase by 3 levels." USSG § 2A4.1(b)(5) (1995). USSG § 1B1.3(a)(1) provides that, in cases of "jointly undertaken criminal activity, a defendant is accountable for the conduct of others that is in furtherance of the jointly undertaken activity and was reasonably foreseeable in connection with that activity." USSG 1B1.3(a)(1), (b) (1995).
 
 
 26
 Appellants argue that the Sentencing Commission has acted contrary to Congress's directive to differentiate between those who actually commit the act of sexual exploitation and those who merely allow it to happen. In support, appellants point to 18 U.S.C. § 1201(g) which directs the Sentencing Commission to provide for a three-level enhancement in cases where the defendant sexually exploited the victim and for a two-level enhancement "if the defendant allowed the child" to be sexually exploited by another person. 18 U.S.C. § 1201(g). However, even if we were to assume that Congress expressed a clear intent to have those who are not the actual perpetrators of "sexual exploitation" receive no higher than a two-level enhancement, it has expressed no such intent with regard to offenses involving adult kidnap victims subjected to sexual exploitation. See 18 U.S.C. § 1201(g).
 
 
 27
 Nor did the district court err in applying the enhancement. The district court found that all appellants were either present for or participated in making the rape threats against Jane Doe. Appellants do not dispute these factual findings, but argue that the enhancement should not have been applied because they were not present when the actual rape occurred. They are incorrect; the rape of Jane Doe was reasonably foreseeable to each appellant. See USSG 1B1.3, comment nn. 1 & 2; cf. United States v. Zelaya, 114 F.3d 869, 870 (9th Cir.1997) (insufficient evidence to support determination that express death threat made by principal during robbery was reasonably foreseeable where there were no facts to show accomplice had reason to suspect threat would be made).
 
 
 28
 Appellants contend that the district court erred when it applied a two-level vulnerable victim enhancement under USSG § 3A1.1(b). This contention lacks merit. Contrary to appellants' assertions, the victims' isolation caused by their lack of familiarity with the American language and culture were appropriate factors for the court to consider. See United States v. Castellanos, 81 F.3d 108, 112 (9th Cir.1996).
 
 
 29
 Finally, appellants contend that the district court erred by applying a two-level serious bodily injury enhancement under USSG 2A4.1(b) because the victims did not require medical intervention. This contention lacks merit. The district court reasonably concluded that repeated beatings and cigarette burns amounted to "serious bodily injury" under the guidelines, based on evidence that the victims suffered "extreme physical pain." See USSG 1B1.1, comment (n.1(j)) (serious bodily injury includes injury involving "extreme physical pain ... or requiring medical intervention"); see also United States v. Corbin, 972 F.2d 271, 272-73 (9th Cir.1992) (per curiam).
 
 
 30
 Appellants' convictions and sentences are AFFIRMED.
 
 
 
 **
 Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Appellant Ching Lin, who pleaded guilty, joins only in the sentencing challenges discussed in part III of this memorandum disposition