**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

LUIS HERNANDEZ-MEZA,
*Defendant-Appellant*.

No. 12-50220

D.C. No.
3:11-cr-05481-
MMA-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Michael M. Anello, District Judge, Presiding

Argued and Submitted
March 6, 2013—Pasadena, California

Filed June 21, 2013

Before: Alex Kozinski, Chief Judge, and Kim McLane
Wardlaw, and Ronald M. Gould, Circuit Judges.

Opinion by Chief Judge Kozinski

# SUMMARY[*]

---

## Criminal Law

The panel vacated an illegal reentry conviction and remanded for further proceedings in a case involving speedy-trial and discovery issues.

The panel held that the district court violated the Speedy Trial Act by excluding time after the defendant notified the court that an agreement had been reached, where nothing in the record indicates that the defendant so notified the court. The panel rejected the government's contention that the two days on which the parties appeared in court and were granted continuances are automatically excluded as "delay resulting from other proceedings concerning the defendant."

The panel held that the district court abused its discretion in granting the government's motion to reopen its case-in-chief to introduce the defendant's mother's naturalization certificate in order to counter the defendant's proffered derivative-citizenship defense. The panel observed that the district judge's single reason for allowing the government to reopen – that everyone was surprised by the derivative-citizenship defense – is not supported by the record. The panel held that the defendant was entitled to a ruling from the district court regarding whether the government's failure to produce the certificate during discovery, as an item in its control "it intends to use . . . in its case-in-chief at trial" under Fed. R. Crim. P. 16, precluded reopening. The panel held

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

that the certificate should have been disclosed in any event as a document material to preparing the defense.

The panel concluded that the defendant was clearly prejudiced by the district judge's leniency in allowing the prosecution to fill the gaps it had left in its case. The panel remanded for an evidentiary hearing into whether the prosecution's failure to disclose the certificate in discovery or at any point before the proofs had closed was willful, and if so, to impose appropriate sanctions. The panel instructed the district court to dismiss the illegal reentry count on account of the Speedy Trial Act violation, with or without prejudice, depending on its weighing of the relevant factors.

The panel ordered reassignment to a different district judge, and retained jurisdiction over any other appeals in this case.

## COUNSEL

Harini P. Raghupathi (argued), Federal Defenders of San Diego, Inc., San Diego, California, for Defendant-Appellant.

Mark R. Rehe (argued), Assistant United States Attorney, Laura E. Duffy, United States Attorney, and Bruce R. Castetter, Assistant United States Attorney, Chief, Appellate Section Criminal Division, Office of the United States Attorney, San Diego, California, for Plaintiff-Appellee.

## OPINION

KOZINSKI, Chief Judge:

We consider a number of questions in this criminal appeal, including the government's discovery obligations under Federal Rule of Criminal Procedure 16.

## I.  BACKGROUND

Luis Hernandez-Meza was charged with illegal reentry. *See* 8 U.S.C. § 1326.  After plea negotiations with the government broke down, he was also charged with falsely claiming to be a United States citizen. *See* 18 U.S.C. § 911. He subsequently filed a motion to dismiss the indictment, alleging a Speedy Trial Act violation.  *See* 18 U.S.C. § 3161(c).  The district judge denied the motion.

Hernandez-Meza's strategy at trial was to cast doubt on whether he is an alien.  Under the law applicable at the time Hernandez-Meza was a minor, he would be a derivative U.S. citizen if both his parents were naturalized before he turned 18.  *See* 8 U.S.C. § 1432(a) (repealed 2001); *see also United States* v. *Casasola*, 670 F.3d 1023, 1026–28 (9th Cir. 2012).[1] Hernandez-Meza argued that the government's proof had left open that possibility and the jury should, therefore, have reasonable doubt as to alienage.  Hernandez-Meza didn't call witnesses or present evidence, but he did cross-examine two of the government's three witnesses about facts supporting his theory, and he discussed the issue during two sidebar conferences.  And, after both sides had rested, he proffered

---

[1] The law changed in 2001 to require that only one parent be naturalized, but the new law is not retroactive.  *See Casasola*, 670 F.3d at 1026–28.

two jury instructions supporting his derivative citizenship defense.

In response to these proposed instructions, the government moved to reopen its case-in-chief to introduce Hernandez-Meza's mother's naturalization certificate. The certificate shows that she became a U.S. citizen nearly twenty years after Hernandez-Meza turned eighteen, foreclosing his derivative citizenship theory. Over defense counsel's repeated objections, the judge permitted the government to reopen. The court observed that Hernandez-Meza's proposed instructions came as "a total surprise to [the government] and everybody else," and that "under the circumstances [the government is] entitled, [in] fairness, to reopen [to introduce the certificate] to make sure everybody has got the facts straight." The jury convicted Hernandez-Meza of illegal reentry.[2]

## II. DISCUSSION

**1. Speedy Trial Act.** "[I]n general, time devoted to plea negotiations is not automatically excluded . . . ." *United States* v. *Alvarez-Perez*, 629 F.3d 1053, 1058 (9th Cir. 2010). In denying Hernandez-Meza's motion to dismiss, the district court relied on a narrow exception to this general rule, which applies when the defendant notifies the court that an agreement has been reached. *See id.* (excluding such time either under § 3161(h)(1)(G) as "delay resulting from consideration by the court of a proposed plea agreement" or under § 3161(h)(1)(D) as time devoted to addressing a "pretrial motion"). But there is nothing in the record to indicate that Hernandez-Meza so notified the district court.

---

[2] It acquitted him of falsely claiming to be a U.S. citizen.

Neither of the minute entries the government cites in support of the district court's ruling indicates that Hernandez-Meza told the court a plea agreement existed. The district court referenced the *Alvarez-Perez* exception but did not point to where in the record Hernandez-Meza so indicated. The district court may have believed that being close to an agreement is enough but, of course, it's not. *Alvarez-Perez* is clear on this point. *See id.*

The government argues that the two days on which the parties appeared in court and were granted continuances are automatically excluded as "delay resulting from other proceedings concerning the defendant." *See* 18 U.S.C. § 3161(h)(1). It's quite a stretch to characterize as "proceedings" brief court appearances—amounting to a page or so of transcript—where the parties come to court just long enough to have the case postponed to another day. Certainly, these brief encounters look nothing like the eight proceedings specifically listed in section 3161(h)(1). While we have recognized that "Congress did not intend to restrict the meaning of 'other proceedings' to those specifically mentioned," *United States* v. *Lopez-Espindola*, 632 F.2d 107, 110 (9th Cir. 1980), the Supreme Court has instructed us that, in construing the broad language in subsection (h)(1), we follow the specific-controls-the-general canon and avoid interpretations that render superfluous more specific STA provisions, *see Bloate* v. *United States*, 130 S. Ct. 1345, 1352 n.9, 1354–56 (2010). Reading subsection (h)(1) to exclude the day on which a continuance is granted—i.e., the first day of the continuance—would be an illegitimate end-run around the STA subsection permitting continuances to be excluded only when the court finds that doing so serves the ends of justice. *See* 18 U.S.C. § 3161(h)(7)(A).

The government here took just two days beyond the STA deadline to bring Hernandez-Meza to trial.  The government could have avoided this problem, had it asked the district judge to stop the STA clock during either of the one-week continuances granted due to the collapse of plea negotiations. *See* 18 U.S.C. § 3161(h)(7)(A); *Zedner* v. *United States*, 547 U.S. 489, 507 (2006).  But the government made no such request and the STA clock ran out.  Under the circumstances, the district judge had no authority to let the case go forward. *See* 18 U.S.C. § 3162(a)(2).

**2.  Motion to Reopen.**  Hernandez-Meza repeats two of the objections to the government's motion to reopen that he raised below:  (a) the government was not surprised and could have proffered the naturalization certificate before it rested its case; and (b) the government was, in any event, not entitled to introduce the naturalization certificate because it had failed to produce it during discovery.  Although they are closely connected, we consider these arguments separately.

**a.  Surprise.**  While district judges have discretion whether to allow parties to reopen their cases, *see United States* v. *Ramirez*, 608 F.2d 1261, 1267 (9th Cir. 1979), we have held that "reopening a case for the purpose of introducing overlooked evidence must be done with extreme reluctance," *Eason* v. *United States*, 281 F.2d 818, 822 (9th Cir. 1960).  The district judge's reason for allowing reopening must, in any event, be supported by the record. *See United States* v. *Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc).

The record here discloses no reluctance on the part of the district judge in allowing the prosecution to reopen, nor is his reason supported by the record. This is the entirety of the district court's ruling: "I think [the AUSA is] entitled to re open [sic]. Go back to that. This is a total surprise to him and everybody else. So I'm going to allow him to re open [sic] for the purpose of offering that [the mother's naturalization certificate] . . . ." In response to defense counsel's objections, the judge delivered his ruling four more times, but gave no additional reasons.

The district judge's single reason for allowing the government to reopen—that everyone was surprised by Hernandez-Meza's defense of derivative citizenship—is not supported by the record. The government's claim of surprise rested on the AUSA's belief that Hernandez-Meza wouldn't present a derivative citizenship defense because he must have known that he wasn't a U.S. citizen:

> Mr. Manahan: The surprise is that this would be an issue because it's the United States opinion that the defendant regardless of discovery, is fully aware of when his own mother naturalized and maybe, if it was like even close to his 18th birthday, maybe they would say, I didn't realize but when it's almost 20 years after wards [sic], defendant has to know that's not an appropriate issue in this case.

But a criminal defendant, unlike the government, needn't have a good faith belief in the factual validity of a defense. So long as the defendant doesn't perjure himself or present evidence he knows to be false—and Hernandez-Meza presented no evidence at all—he's entitled to exploit weaknesses in the prosecution's case, even though he may believe himself to be guilty.

What matters in satisfying the government's burden of proof in a criminal case is not objective reality nor defendant's personal belief, but the evidence the government presents in court. No competent prosecutor would be surprised, based on what he thinks defendant should know, to find defense counsel poking holes in the government's case. The argument is without merit, yet the government made it before the district court, and again on appeal. *See United States* v. *Kojayan*, 8 F.3d 1315, 1320, 1322 (9th Cir. 1993) (we expect the government on appeal not to repeat specious arguments line prosecutors make in the heat of the moment).

There may be situations where the government can legitimately claim surprise. For example, the Federal Rules of Criminal Procedure require defendants to give advance notice of an insanity defense, Fed. R. Crim. P. 12.2(a); a public authority defense, *id.* 12.3(a)(1); and, if the prosecution submits a written request, an alibi defense, *id.* 12.1(a). If the defendant fails to give a required notice, the government may well be able to claim unfair surprise. But when our rules and precedents don't require the defendant to give notice, he's entitled to remain silent as to what defense he will present, and the government must anticipate any issues he might raise.

In any event, the record is clear that the government was *not* surprised by Hernandez-Meza's derivative citizenship defense. Defense counsel clearly telegraphed her strategy in plenty of time for the government to proffer the naturalization certificate before it rested. During a sidebar conference barely halfway through the government's case-in-chief, defense counsel clearly alluded to derivative citizenship and the government's lack of evidence on the point:

> Ms. Kimpel: We'd also be impeaching by omission the fact that those critical factors which would give rise to a derivative citizenship [claim] are not included in the reports.

> The Court: We're not going to be litigating a derivative citizenship claim here. This is not the place to do that. You want the jury to speculate may be [sic] he is a citizen or has citizenship rights?

> Ms. Kimpel: I think what we're saying is with the evidence the government presented, given direct contrary evidence, he hasn't been able to prove he's not a citizen and hasn't proved he's an alien.

And then again, later in the same sidebar conference:

> Ms. Kimpel:    Your honor is allowing us to impeach by omission if some of the information is not in the report.  That would be important to a derivative citizenship claim.

Following this sidebar, defense counsel cross-examined Sara Esparagoza, a customs and border protection officer who interviewed Hernandez-Meza when he tried to enter the country.  Hernandez-Meza's attorney questioned Esparagoza extensively about the immigration form she filled out after her interview with Hernandez-Meza.  First, defense counsel noted that the front page of the form listed information about Hernandez-Meza's parents:

> Ms. Kimpel:    [T]he reason that that front page has that information about the parents is because that can be important [to the potential alien's] immigration status?

> Esparagoza:    Correct.

> Ms. Kimpel:    And in fact, sometimes people can be citizens, even if they aren't born in the United States?

| Esparagoza: | A person can be a citizen of the United States even if they are not born in the United States. Yes, that's correct. That can happen. |
| --- | --- |
| Ms. Kimpel: | Based on the citizenship of their parents? |
| Esparagoza: | Correct. Sometimes. |

Defense counsel then led Esparagoza through a series of questions, revealing that the officer had incorrectly marked on the form that both of Hernandez-Meza's parents were Mexican citizens. Defense counsel showed Esparagoza a copy of Hernandez-Meza's mother's U.S. passport, and Esparagoza confirmed that the mother was a U.S. citizen. Esparagoza also admitted that (1) she based her information about Hernandez-Meza's father's immigration status on what Hernandez-Meza told her during the interview and (2) Hernandez-Meza told her that his father was a U.S. citizen.

The Esparagoza cross-examination came immediately after the first sidebar conference, where the parties discussed the derivative citizenship defense. Defense counsel's questions must be read in light of the fact that, two transcript pages earlier, she had made clear that the defense would be challenging the government's proof of alienage. No one paying attention could have had any doubt as to the line of defense that counsel was pursuing.

Following Esparagoza's testimony, the government presented Jorge Rosario, the custodian of Hernandez-Meza's alien registration file. At defense counsel's prompting,

Rosario confirmed that (1) "there are many ways people can become United States citizens," (2) a person can "be a United States citizen if one of their parents was a United States citizen" and (3) a person can "become a citizen if [he is] a child and [his] parents naturalized" if "certain requirements" are met. Rosario also stated that Hernandez-Meza's father was a naturalized U.S. citizen at the time that Hernandez-Meza was legally admitted into the United States as a child.

During a second sidebar, near the end of Rosario's testimony, defense counsel explained, in so many words, that she would be challenging the element of alienage by suggesting that Hernandez-Meza may be a derivative citizen:

> Ms. Kimpel:     *I'm challenging the element of alienage.* They don't have to prove it was a lawful deportation. They just need to prove that he's not a citizen of the United States. And whatever status that he lost would not go as to whether he was a citizen or not except for the purposes that we're trying to raise that he had status before he was 18 and that could go toward *derivative citizenship*.

(Emphasis added). It's hard to imagine a clearer statement than that.

All of this happened while the government was still presenting its case, so it could easily have proffered the mother's naturalization certificate before resting.[3]  Nor is there any doubt that the government understood full well that the timing of the mother's naturalization was crucial to Hernandez-Meza's defense:

> Mr. Manahan: As a matter of law, he's not a derivative citizen.  His mother naturalized and based on when he was born for derivative citizenship, it really keys in on the mother, she naturalized way after he turned 18.  As a matter of law, he's not a derivative citizen.

Defense counsel, in her turn, alerted the court and the government to the fact that the date of the mother's naturalization was not reflected in any document the government had introduced into evidence or disclosed during discovery:

---

[3] Had it done so, however, it would no doubt have been met with the objection that the document wasn't disclosed during discovery.  *See* pp. 15–19 *infra*.  The AUSA likely did not offer the naturalization certificate before resting because he knew he was precluded from doing so by the clear command of Federal Rule of Criminal Procedure 16(a)(1)(E)(ii), which requires the government to disclose documents it intends to present in its case-in-chief.  The prosecutor may have hoped to introduce the document by way of rebuttal and was surprised when defendant didn't present any evidence.  That, of course, is not the type of surprise that justifies reopening.

> Ms. Kimpel: The government made a representation about whether Mr. Hernandez's mother became a citizen. I haven't seen any evidence in the government's case that discusses that nor had I been provided any in discovery.

The government did not, even then, give defense counsel a copy of the certificate, even though the prosecutor had it with him in court.

Given these clear indications that Hernandez-Meza's derivative citizenship status would be interposed as a defense, and that the date of his mother's naturalization would be an issue, it's difficult to understand how the district judge could have stated, only twenty-nine transcript pages later, that "this [defense] is a total surprise to [government counsel] and everybody else." Indeed, the government lawyer conceded that he "became first aware this would be a possible defense . . . moments before we rested." If the AUSA knew *before* he rested that derivative citizenship would be a "possible defense," he couldn't very well have been surprised when defense counsel proceeded to argue just that *after* he rested. Because the district court's ruling—allowing the government to introduce evidence after the proofs had closed—failed to show the proper degree of reluctance and misstated the record, it was an abuse of discretion. *See Hinkson*, 585 F.3d at 1261–62.

**b. Discovery.** Upon a proper request by the defendant, the government must produce items in its control that it "intends to use . . . in its case-in-chief at trial." *See*

Fed. R. Crim. P. 16(a)(1)(E)(ii). The government doesn't contest that the mother's naturalization certificate was in the government's control or that Hernandez-Meza made a timely Rule 16 request.

In defense counsel's view, there was no point in allowing the government to reopen because it had failed to disclose the certificate during discovery and so was precluded from introducing it as part of its case-in-chief. Despite defense counsel's attempts to engage the district court on this issue, the court never addressed it. When defense counsel reiterated the argument, the judge brushed her off: "We're beyond that," he said, and moved on.

But defense counsel had raised a legitimate issue and was entitled to a ruling from the district court. Giving an explanation for significant rulings is an important component of due process. It lets the adversely affected party know that the judge has heard and understood its argument, and that the judge's ruling is based on the facts and the law. An explanation also allows the judge to confirm that his ruling is correct. If he is unable to articulate a plausible rationale for his ruling, he may think better of it. Finally, and not least, by failing to give any indication that he applied the correct legal standard, the district judge made appellate review difficult. *See Hinkson*, 585 F.3d at 1261–62; *cf. United States* v. *Taylor*, 487 U.S. 326, 336–37 (1988) ("[A] district court must . . . clearly articulate [its reasoning] in order to permit meaningful appellate review.").

Had the district judge paused to consider defense counsel's argument, he may well have realized that the government was seeking to reopen in order to present a document during its case-in-chief that it had failed to disclose

during discovery. But, by failing to disclose, the government undertook the clear risk that it would be precluded from presenting the document as part of its principal case. *See* Fed. R. Crim. P. 16(a)(1)(E)(ii); *id.* 16(d)(2). Allowing the government to reopen in order to introduce the document circumvented the government's self-imposed limitation. This was unfair to Hernandez-Meza, who was entitled to build his defense strategy on the assumption that he had seen all the items the government would present as part of its case.

The naturalization certificate should have been disclosed in any event under the separate prong of Rule 16 that applies to documents "material to preparing the defense." *See* Fed. R. Crim. P. 16(a)(1)(E)(i). Materiality is a low threshold; it is satisfied so long as "the information [in the certificate] would have helped" Hernandez-Meza prepare a defense. *United States* v. *Doe*, 705 F.3d 1134, 1151 (9th Cir. 2013). Information is material even if it simply causes a defendant to "completely abandon" a planned defense and "take an entirely different path." *Id.* Had Hernandez-Meza known that the government had the certificate, he may not have staked his case on his derivative citizenship theory. The certificate is unquestionably material and should have been disclosed by the government.

The government argues that it couldn't have known the certificate was material to the defense. But one of the elements of illegal reentry is alienage. *See United States* v. *Sandoval-Gonzalez*, 642 F.3d 717, 721–22 (9th Cir. 2011). And Hernandez-Meza was also charged with falsely claiming to be a U.S. citizen. His U.S. citizenship or lack thereof was thus central to the case. The AUSA didn't need much imagination to realize that Hernandez-Meza might try to cast doubt on the government's proof of his alienage. The AUSA

must have understood that derivative citizenship was a possible line of defense—why else would he have had the mother's naturalization certificate with him in court?

A defendant needn't spell out his theory of the case in order to obtain discovery. Nor is the government entitled to know in advance specifically what the defense is going to be. The relevant subsection of Rule 16 is written in categorical terms: Upon defendant's request, the government must disclose any documents or other objects within its possession, custody or control that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). Unlike the preceding and subsequent subsections, which both require that "the government knows—or through due diligence could know—that the" item exists, *see* Fed. R. Crim. P. 16(a)(1)(D), (F), subsection (E) is unconditional. Lack of knowledge or even a showing of due diligence won't excuse non-compliance.

It thus behooves the government to interpret the disclosure requirement broadly and turn over whatever evidence it has pertaining to the case. *See United States* v. *Leal-Del Carmen*, 697 F.3d 964, 969 n.4 (9th Cir. 2012); *see also* Editorial, *Beyond the Brady Rule*, N.Y. Times, May 19, 2013, at SR10. When there has been a proper Rule 16(a)(1)(E)(i) request, and the prosecution finds itself holding a document during the trial that it should have turned over, as happened here, it must promptly advise opposing counsel and the court that it hasn't complied with its Rule 16 obligations. *See* Fed. R. Crim. P. 16(c). The district court can then take such remedial measures as it deems appropriate, including continuing the trial or declaring a mistrial. *See* Fed. R. Crim. P. 16(d)(2).

The record suggests that the government may have deliberately withheld the naturalization certificate from Hernandez-Meza, perhaps hoping to lock him into a defense he couldn't win.  It may have hoped to present the certificate by way of rebuttal—under the mistaken impression that it did not need to disclose the document if it didn't intend to present it in its case-in-chief—and was then outflanked when defendant did not put on any evidence.  We infer this from the record as a whole and particularly from the fact that the prosecution knew the date of Hernandez-Meza's mother's naturalization and its relevance to the case, yet didn't produce the certificate even after defense counsel pointed out the lacuna.  *See* pp. 14–15 *supra*.  However, this is a factual finding that must be made by a district court in the first instance.  If the government willfully withheld the certificate, then it should be precluded from introducing the document at any retrial of Hernandez-Meza, or perhaps even suffer a dismissal of the indictment with prejudice.  *See Kojayan*, 8 F.3d at 1325 (remanding for a decision as to whether indictment should be dismissed with or without prejudice).

> **c.   Prejudice.**  The government rattles off a long list of reasons Hernandez-Meza wasn't prejudiced, but none of these changes the fact that, had the court denied the motion to reopen, Hernandez-Meza would have been left with a viable derivative citizenship defense.  Without the certificate, the government hadn't conclusively foreclosed that defense during its case-in-chief, which is doubtless why it moved to reopen its case after Hernandez-Meza asked for jury instructions on that very point.  Hernandez-Meza was clearly prejudiced by the district judge's leniency in allowing the prosecution to fill the gaps it had left in its case.

\*          \*          \*

We vacate the conviction and remand for an evidentiary hearing into whether the prosecution's failure to disclose the certificate in discovery or at any point before the proofs had closed was willful. If it was willful, the district court shall impose appropriate sanctions. The district court shall, in any event, dismiss the illegal reentry count of the indictment on account of the STA violation, with or without prejudice, depending on its weighing of the relevant factors. *See* 18 U.S.C. § 3162(a)(2); *United States* v. *Lewis*, 349 F.3d 1116, 1121–22 (9th Cir. 2003).

We are perturbed by the district court's handling of the reopening issue. The court persisted in giving a reason for allowing the government to reopen that was contradicted by the record, despite defense counsel's repeated attempts to point out the error. The court also ignored defendant's twice-raised Rule 16 objection and made a questionable ruling regarding defendant's Speedy Trial Act claim.

"Whether or not [the district judge] would reasonably be expected to put out of his mind" his previous rulings, and "without ourselves reaching any determination as to his ability to proceed impartially, to preserve the appearance of justice, . . . we conclude reassignment is appropriate," and we so order. *See Ellis* v. *U.S. Dist. Court* (*In re Ellis*), 356 F.3d 1198, 1211 (9th Cir. 2004) (en banc).

**VACATED and REMANDED.** This panel retains jurisdiction over any further appeals in this case.